NIEMEYER, Circuit Judge,
dissenting:
James Wilson’s employment with Phoenix Specialty Manufacturing Company, a manufacturer of specialty washers, was terminated August 1, 2002. Phoenix Specialty contended that it was eliminating Wilson’s position as part of a reduction-in-force in response to financial difficulties. It claimed that Wilson was selected as part of the reduction-in-force because he was unable to do efficiently some of the tasks that were required in its shipping department; he made “many errors with tasks”; and he failed to master the new computer system that had been installed months earlier.
Wilson contended, however, that his employment was terminated because of his Parkinson’s disease, which had been diagnosed in 1998, and the health insurance costs required to treat that disease. He alleged that he had an impairment but was able to perform his job “with slight accom *389 modation” and did so as expected by Phoenix Specialty.
At trial Wilson testified that he needed help in performing several of the tasks assigned to him. He stated that he asked for a 21-inch screen for his computer to mitigate his reduced ability to see, but he was given a 17-inch screen. He stated he needed help with his hand-writing:
My handwriting was bad. You couldn’t read what I was writing. And I would ask for help in handwriting, and I was told that I could not use — I was using Marviette Hogan, because she was in the shipping department. I was told I could not use her by Mr. Wise and Mar-viette because it was not her job to do that.
He stated that he was told not to “mess with the Pitney-Bowes shipping machine and key in inventory,” because he made too many errors inputting the machine. As he acknowledged, “I could not do it as fast because of the slowness effect of the Parkinson’s disease on the right side. And I asked for help.” He testified that he was “slow in typing because of Parkinson’s disease.” He indicated that he had “trouble writing for a long time; and the evaluations [of employees] were due to be in, and I asked [Crystal Baxley, the company’s human resources assistant] if she would help me write the evaluations.” In preparing the company’s specialty washers for shipping, he stated that he could not perform the count that was necessary: “I counted the big items, the bulky items. And the small items that were so thin, I would shake so bad that I didn’t have the dexterity to handle them, so I would set them aside when I was helping on the assembly line for other shipping clerks to count.”
To show that his firing was a pretext for discrimination based on his disability, Wilson put in evidence that Phoenix Specialty knew fully of his condition and monitored every detail, going so far as to track his doctor visits and medical bills. He testified that Phoenix Specialty “required” him “to report to management ... what the doctor told [him].” In addition, the company was aware of the nature and scope of the particular effects of his impairment in that it was involved in addressing them. The company provided him with a 17-inch computer screen, assisted him in writing reports, and circumscribed some of his tasks, prohibiting him, for instance, from keypunching inventory into the computer system because of his lack of dexterity. The record amply demonstrates that during the period when Phoenix Specialty was considering its reduction-in-force, it knew the full extent of Wilson’s ability and disability.
Following a bench trial, the district court found as facts the following:
At all times through the date of Wilson’s termination, notwithstanding his Parkinson’s disease, the Plaintiff was able to perform the essential functions of his job with minimal accommodations. In fact, the defendant states in its position statement to the EEOC that the plaintiffs Parkinson’s Disease did not impact his ability to do his job. Plaintiff merely needed some help with writing and he needed a larger computer screen. Although the plaintiff requested a twenty-one inch screen he was given only a seventeen inch screen, the size that other supervisors were given. Plaintiff also asked for assistance with handwriting. He had instructed an employee in his department, Marviette Hogan, to help him write evaluations. Robert Hurst and Harry Wise told Plaintiff he could not use Hogan to write for him. Wilson finally requested assistance from Defendant’s Human Resources Assistant, Crystal Baxley, to help write the evaluations. Both Baxley and Hurst knew that Wilson was having problems writ *390 ing and that these problems were related to his Parkinson’s disease. The defendant presented no evidence that these accommodations would have constituted an undue hardship. At the time of his discharge in 2002, his medical evidence indicates that Wilson’s condition was stabilized by medication. In addition, as shown by plaintiffs exhibit 7, the handwritten notes by Wilson regarding supplies which should be ordered, written on August 2, 2002, the plaintiff was still able to write at that time, although apparently with some difficulty. He could also play golf, coach youth sports and drive.
But the district court concluded as a matter of law that the plaintiff was not disabled as that term is defined in the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 12102(2)(A) (defining “disability” as a “physical or mental impairment that substantially limits one or more of the major life activities of such individual”):
The Court finds that the plaintiff has not proved that, as of August 1, 2002 (the date of discharge), [Wilson] satisfied the requirements of 42 U.S.C. § 12102(2)(A). Based upon the testimony of Dr. Berg-mann, the plaintiff was still able to work on the date of discharge, and his symptoms were fairly well controlled by medication. Therefore, his impairment did not substantially limit any major life activities at that time.
Necessarily, therefore, the facts to which Wilson testified — and as found by the district court — about his ability to do his job constituted an “impairment,” but not one constituting a “disability.” Relying on the same facts found, however, the district court concluded, as a matter of law, that “Phoenix regarded him as having” a disability under 42 U.S.C. § 12102(2)(C). To support this ruling, the district court stated:
[T]he testimony revealed that the company officials believed that Wilson was substantially limited in the major life activity of performing manual tasks. This was shown by their belief that he was unable to adequately key information into a computer, write, and count washers. The Court finds that Wilson was perceived by Phoenix as unable to perform a variety of manual tasks central to most people’s daily lives. Further, the evidence at trial revealed that the company officials believed that Wilson was substantially limited in the major life activity of seeing. This was shown by their belief that he had difficulty in adequately utilizing the information on the computer screen.
The district court thus concluded that Phoenix Specialty regarded Wilson as being disabled because of its belief that (1) Wilson was unable to key information into a computer adequately; (2) he was unable to write adequately; (3) he was unable to count washers; and (4) he had difficulty seeing the information on his computer screen. Each of these four beliefs attributed to Phoenix Specialty were, however, accurate ones, and their accuracy was demonstrated by the direct testimony of Wilson at trial and the district court’s findings of fact.
The impairments that were imputed to Phoenix Specialty’s belief were also incontrovertibly matters with which Phoenix Specialty was fully familiar. It knew of Wilson’s difficulty in seeing because Wilson asked Phoenix Specialty for a 21-inch computer screen, and Phoenix Specialty gave him a 17-inch screen. Wilson asked for help with respect to writing and typing, and Phoenix Specialty employees provided him assistance in varying degrees. And, as for the uncounted washers, Wilson left them for the other Phoenix Specialty employees to count and ship. All of these situations were discussed with manage *391 ment. In addition, management had the benefit of monitoring the medical reports of doctors who were treating Wilson and of Wilson’s debriefings of his treatment.
The analytical difficulty in which Wilson finds himself now is that he prosecuted his case as one in which his termination was based on a disability that involved substantial limitations with respect to major life activities, as defined in 42 U.S.C. § 12102(2)(A). After the district court rejected that position, finding that he did not prove actual limitations of major life activities, he is left to argue the opposite position, that he was not so disabled but Phoenix Specialty regarded him as so disabled. The viability of such a position, however, tends to collapse in the switch, because: (1) Wilson did not suffer limitations of major life activities; (2) Phoenix Specialty fully understood the limitations he was suffering at the time he was terminated and thus could not have misperceived them; and (3) there was no evidence or finding that Phoenix Specialty incorrectly believed that Wilson was substantially limited as to major life activities. I address these three points in order to show how they defeat his claim as a matter of law.
I
There is no question now that Wilson did not suffer limitations of major life activities, as required to show a disability under 42 U.S.C. § 12102(2)(A). The district court found that Wilson was not disabled in this manner, finding that at the time of his termination, “his impairment did not substantially limit any major life activities.” (Emphasis added). And, Wilson does not appeal this holding. Accordingly, we begin the analysis with the fact that while Wilson suffered from Parkinson’s disease, which caused him difficulties in performing his job tasks, none of the limitations found by the district court amounted to limitations of major life activities. Thus, Wilson is left with the claim that Phoenix Specialty “regarded” his impairment to limit major life activities, as “disability” is defined in § 12102(2)(C).
II
Because Wilson did not have an impairment that substantially limited one or more of his major life activities, he must now rely on the district court’s conclusion that Phoenix Specialty believed that he did have such an impairment and acted on that belief.
The ADA prohibits an employer from discriminating against an employee on the basis that the employer “regarded” the employee as having an “impairment that substantially limits one or more of [his] major life activities.” 42 U.S.C. §§ 12102(2)(C), 12112(a). To establish such a “regarded as” claim, a plaintiff must show that the employer was mistaken in its belief that its employee was suffering a substantial limitation of one or more o'f his major life activities. As the Supreme Court has explained:
There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misper-ceptions about the individual — it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.
Sutton v. United Air Lines, 527 U.S. 471, 489,119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (emphasis added). Thus, as relevant to this case where Wilson did not suffer an *392 impairment substantially limiting a major life activity, Wilson must demonstrate that Phoenix Specialty mistakenly believed that he did suffer an impairment that substantially limited a major life activity. It is not sufficient for him to show that Phoenix Specialty had a mistaken belief about whether he was “unable to perform the tasks associated with [his] specific job.” Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200-01, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).
Wilson made no such showing. Indeed, he undertook to prove at trial (1) that he in fact had an impairment substantially limiting a major life activity and (2) that Phoenix Specialty was fully aware of the impairment. He undertook to prove that Phoenix Specialty was fully aware of his condition to satisfy the requirement that the reasons given by Phoenix Specialty for his discharge were a pretext. Yet while the district court concluded that Wilson failed to prove the requisite nature of his impairment, it agreed with Wilson that Phoenix Specialty knew of the nature of his impairment, finding that Phoenix Specialty’s reasons for termination were a pretext. It now becomes nearly impossible for Wilson to claim that even though Phoenix Specialty was fully aware of his impairment, it was mistaken in its belief that he was impaired.
The district court’s conclusions do not help Wilson. It found that Phoenix Specialty believed that Wilson “was unable to adequately key information into a computer, write, and count washers” and could not “adequately utiliz[e] the information on the computer screen.” It relied on no other beliefs held by Phoenix Specialty. Yet these identified beliefs on which the district court relied were not misbeliefs or misperceptions, as required to establish liability under the Act. To the contrary, they were accurate beliefs.
First, Wilson testified fully to actually having the impairments described by the district court. Wilson testified that in order to key functions into the computer, he needed a larger computer screen; he stated that his handwriting was “bad” and one “couldn’t read what [he] was writing”; he said that he could not key inventory information into the computer system “as fast because of the slowness effect of the Parkinson’s disease on the right side,” prompting him to ask for help; he testified that he was “slow in typing because of Parkinson’s disease”; he said that he had “trouble writing for a long time” and that he needed help to write evaluations of subordinates; he said that he could not count small washers because he “would shake so bad that [he] didn’t have the dexterity to handle them.” Each of Phoenix Specialty’s beliefs found by the district court with respect to these matters was in fact accurate.
Moreover, the evidence showed that Phoenix Specialty knew fully and accurately about each of the impairments testified to by Wilson and found by the district court. With respect to seeing the computer, Wilson informed Phoenix Specialty about his impairment, and Phoenix Specialty provided him with a larger computer screen, albeit not the 21-inch screen requested. In connection with his writing inadequacies, Wilson requested other employees of Phoenix Specialty to help him, namely Marviette Hogan, a subordinate employee, and Crystal Baxley, the human resources assistant. As the district court found, “Both Baxley and Hurst [the chief operating officer of Phoenix Specialty] knew that Wilson was having problems writing and that these problems were related to his Parkinson’s disease.” Finally, with respect to the inability to count washers, Wilson stated that he set aside the washers that he could not count for other people in the company to count. In addi *393 tion, Wilson himself testified to seeking help from company employees and to discussing his impairments with “management.” He stated affirmatively that other than the impairments to which he testified, he did not discuss any other problems with management.
In addition to the knowledge held by Phoenix Specialty about Wilson’s specific impairments, the record showed that Phoenix Specialty monitored Wilson’s medical condition, reviewing doctors reports and receiving debriefings from Wilson himself after each doctor’s visit.
There is simply no evidence from which to conclude that Phoenix Specialty had a misperception about Wilson’s impairments at the time it terminated his employment, nor did the district court find any. To the contrary, the district court seemed to assume that if Phoenix Specialty believed that Wilson had the impairments that the court identified and if Phoenix Specialty acted on those beliefs, it violated the ADA without the need for finding a misbelief. As the district court stated:
[T]he testimony revealed that the company officials believed that Wilson was substantially limited in the major life activity of performing manual tasks. This was shown by their belief that he was unable to adequately key information into a computer, write, and count washers. The Court finds that Wilson was perceived by Phoenix as unable to perform a variety of manual tasks central to most people’s daily lives. Further, the evidence at trial revealed that the company officials believed that Wilson was substantially limited in the major life activity of seeing. This was shown by their belief that he had difficulty in adequately utilizing the information on the computer screen.
(Emphasis added). Thus, the court relied on Phoenix Specialty’s belief of the very impairments to which Wilson testified and about which Phoenix Specialty had complete knowledge. What the court failed to recognize, however, was that it had to find that Phoenix Specialty misperceived Wilson’s condition. In the absence of a mis-perception, the district court could not have concluded that Phoenix Specialty “regarded” him as being disabled. See Sutton, 527 U.S. at 489, 119 S.Ct. 2139.
To support his “regarded as” claim on appeal, Wilson relies heavily on an incident that occurred more than a year before his discharge to argue that Phoenix Specialty had a misconception about his disability. While the incident is hardly relevant to what occurred more than a year later when Wilson was discharged, there are numerous additional reasons why the incident was an insufficient basis on which Wilson could rely to support his case.
In May 2001, Wilson suffered a panic attack while at work, after which he spent the next few weeks on a fully paid medical leave of absence. During his leave, he saw both his local doctor, who also happened to be Phoenix Specialty’s company doctor, and a specialist in Charleston, South Carolina. Although the specialist cleared Wilson to return to work with no restrictions, Phoenix Specialty instructed Wilson to get clearance from the local doctor before it would permit him to work. While Wilson never actually saw the local doctor again during this time frame, he did return to full time work in late June 2001. During Wilson’s absence from work, the president of Phoenix Specialty wrote an email message stating that Wilson “qualifie[d] for ADA designation.” Wilson relies upon this fragmentary statement to argue that Phoenix Specialty mistakenly regarded him as disabled under the ADA.
This limited evidence, however, is taken out of context and fails to take into account that the same person observed, after Wilson’s return to work, that Wilson “re *394 turned to his former self,” “was a lot stronger,” “was alert,” and “was back to the [Wilson] who had been with us previously.” Moreover, it fails to recognize that the statement was neither unreasonable nor inaccurate. In the weeks following Wilson’s debilitating panic attack that rendered him physically unable to work, it was simply good management to note that Wilson qualified for ADA designation, implying that the company should act appropriately. Given Wilson’s Parkinson’s disease, the email was accurate inasmuch as Parkinson’s disease is an impairment that can enable a person to be a “qualified individual with a disability” under the ADA. But to say that Wilson “qualifies for ADA designation” says nothing that supports the notion that Phoenix regarded Wilson as actually “disabled,” as that term is used in the ADA.
Ill
Finally, the district court erred in concluding that Phoenix Specialty’s belief about Wilson’s identified impairments amounted to a belief that Wilson was substantially limited in “one or more of his major life activities.”
The district court properly held that none of Wilson’s identified impairments substantially limited a major life activity. Yet, to support its “regarded-as-disabled” conclusion, the district court recharacter-ized Phoenix Specialty’s belief about those very same impairments as a belief that Wilson was substantially limited in a major life activity. This was obviously a flawed analysis or a misperception of the law. The district court could not properly find the specific impairments identified by Wilson not to substantially limit any major life activities and at the same time say that because Phoenix Specialty believed that Wilson had these impairments, they became beliefs about substantial limitations of major life activities.
As both Toyota and Sutton make clear, it is not enough simply for an employer to have a mistaken perception of an employee’s impairments with respect to his specific job. See Toyota, 534 U.S. at 200-01; Sutton, 527 U.S. at 489-91, 119 S.Ct. 2139. Rather, an employer must incorrectly believe that an employee’s impairments substantially limit major life activities. See 42 U.S.C. § 11202(2); Toyota, 534 U.S. at 196-202, 122 S.Ct. 681. Thus, the district court’s factual findings with respect to Phoenix Specialty’s belief regarding Wilson’s ability to perform tasks associated with his specific job failed to establish that Phoenix Specialty mistakenly regarded Wilson as limited in performing major life activities.
There can be no doubt that Phoenix Specialty had concerns about Wilson’s ability to perform specific tasks on his job. But its concerns were with the very impairments that the court found did not substantially limit major life activities; they related merely to difficulties in job performance. Concerns about job performance, however, do not support the legal conclusion that Phoenix Specialty believed Wilson to be “substantially limited” in any “major life activities.” As the Supreme Court stated in Toyota, “[T]he manual tasks unique to any particular job are not necessarily important parts of most people’s lives. As a result, occupation-specific tasks may have only limited relevance to the manual task inquiry.” Id. at 201, 122 S.Ct. 681. Absent any showing of a misperception by Phoenix Specialty that Wilson was substantially limited in a major life activity, the company was “free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job” without running afoul of the ADA. Sutton, 527 U.S. at 490-91, 119 S.Ct. 2139.
*395 IV
Because Wilson was not an individual with a disability, as defined by the ADA, it is not necessary to consider Phoenix Specialty’s challenge to the district court’s finding that Phoenix Specialty’s stated reasons for firing Wilson were a pretext for discrimination. Wilson was neither actually disabled nor regarded by Phoenix Specialty as being disabled, so Phoenix was free to discharge him as an at-will employee for any of the reasons Phoenix provided, or even because it thought that Wilson’s non-substantially limiting Parkinson’s disease made him “less than ideally suited for [his] job.” Sutton, 527 U.S. at 491, 119 S.Ct. 2139.
For these reasons, I would reverse the judgment of the district court. In addition, I take the dissenter’s privilege to observe that in affirming the district court, the majority failed to interpret the ADA “strictly to create a demanding standard for qualifying as disabled,” as instructed by the Supreme Court. See Toyota, 534 U.S. at 197, 122 S.Ct. 681.